# CHARLESTON.

CHARLESTON TRUST CO. *v.* CONSOLIDATED REALTY CORPORATION
*et al.*

(No. 6698)

Submitted May 14, 1930.   Decided May 20, 1930.

226

*Blue, Dayton & Campbell,* for appellant.

*Bowers & Gilchrist* and *Koontz, Hurlbutt & Revercomb,* for appellee Bond.

*Jo N. Kenna* and *A. M. Belcher,* for appellee Moore.

HATCHER, JUDGE:

In a tort action in the circuit court of Kanawha county, W. C. Bond obtained a judgment of $9,500 against S. A. Moore. A writ of error was awarded by this court upon the application of Moore. While the case was pending here, several creditors' suits were brought for the purpose of subjecting Moore's real estate to the payment of his debts. These suits were consolidated. No supersedeas having been given to Bond's judgment, it was proved before the commissioner in the creditors' suit, and was allowed immediate priority to a claim of $41,438.50 of the Capital City Bank. No exceptions were taken to the commissioner's report. Upon a sale of Moore's property, it developed that the liens could be paid only to and partly including Bond's judgment. The bank thereupon attempted without success to settle or buy Bond's claim, or to have its counsel prosecute the writ of error. Moore and Bond then entered into a written contract, whereby Moore

agreed to move for the dismissal of his writ of error, and if successful, Bond agreed to pay Moore's attorneys $1,000 and release such of the judgment as would not be paid in the creditors' suit (between four and five thousand dollars). Upon notice of the motion, the bank filed a petition in the creditors' suit, asking for an injunction to restrain Moore from dismissing the writ and for the appointment of a receiver to prosecute the same at the bank's expense. Failing to obtain relief in the circuit court, the bank secured an appeal.

The appellant contends that Moore by reason of insolvency became a trustee of such property as remained in his hands for the benefit of his creditors; that the writ of error in his case with Bond is a property right; and that its surrender is a violation of Moore's trusteeship as well as an attempt to prefer Bond.

Debt is primarily a personal matter. Insolvency is simply a decree of indebtedness. Therefore, insolvency alone does not confer on a creditor any dominion over the debtor's property. That dominion must be acquired by contract or judicial proceeding. If no contract exists, the creditor may acquire a special right over the debtor's real estate by a judgment, and over his personal property by an execution, an attachment, or sequestration in a suit in equity. Until the creditor has subjected the property of the debtor in some such manner, the debtor can, within statutory restrictions, exchange or sell his property or contract in relation to it at his discretion. Bump on Fraudulent Conveyances (4th Ed.) § 179; Waite, Fraud. Conv. (3d Ed.) § 73; *Kimball* v. *Thompson,* 4 Cush. (Mass.) 441, 50 Am. Dec. 799; *Adler* v. *Fenton,* 24 How. 407, 412, 413, 16 L. Ed. 696. Code, c. 74, §§ 1 and 2, shackle no transfer of an insolvent, if for a valuable consideration and without attempt to prefer, or exclusively secure, or intent to delay, hinder, or defraud a creditor. Consequently, settled rules of law exclude the trust fund theory.

The $1,000 promised by Bond in exchange of Moore's surrender of the right to further prosecute his writ of error satisfies the requirement as to a valuable consideration. The contract was one of barter for mutual benefit, and does not im-

228

ply *an intent* to delay, hinder, or defraud creditors. However, its effect on appellant's judgment is disastrous. As long as the writ of error is undisposed of, Bond's judgment is unsure and its payment is postponed. With the writ dismissed, the judgment would immediately become sure and payable to the extent of funds available. Therefore the contract would give to Bond's judgment that most essential element, stability. But aid to Bond is injury to appellant. In stabilizing (preferring) Bond's judgment, the contract necessarily (through paucity of funds) excludes the possible satisfaction of any part of appellant's judgment. Section 2, c. 74, Code, pronounces the following judgment on such a contract: "Every transfer or charge made by an insolvent debtor attempting to prefer any creditor * * * or to secure such a creditor * * * to the exclusion * * * of any other creditor, shall be void as to such preference or security." The statute further provides that suit may be brought by the creditor within one year after such transfer was made, to set aside and void the same. The statute therefore affords both the procedure and the fundamental relief to which appellant is entitled. An injunction against performance of the contract, and the administration of the writ (through a receiver if necessary), are but ancillary to the statutory relief. The fact that appellant will be the sole beneficiary of that administration is merely incidental.

It is a general rule, as appellees contend, that an appellate court has exclusive jurisdiction over the parties as well as the subject-matter in an appellate proceeding. That rule is necessarily limited to situations in which the appellate court can do justice to all concerned. By reason of insolvency Moore has not been able or inclined to press his writ. The same reason discredits the idea that he will press it. We could refuse his motion to dismiss the writ; but we could not provide for its prosecution (by a receiver) as can the circuit court. Without prosecution the writ would be subject to dismissal. The limitation of our power would bring about the very condition which will aggrieve the appellant. We are therefore not in position to meet the exigency of this case.

The general rule is also based on the assumption that the parties to an appellate proceeding will not use the writ to interfere with litigation in a lower court. If they do so, why should we be zealous to extricate them from the consequences of such effrontery? Here, the bank had placed its lien in custodia legis in the creditors' suit. An imperative obligation rests on a court to protect property thus committed to its care. We should honor the performance of that duty by a lower court, even if it technically encroaches on our own prerogatives. Appellees place great reliance on the declarations in the opinion of *Colman* v. *Oil Co.*, 25 W. Va. 148, 174, 175, to the effect that no court would enjoin one who had sued out a writ of error from dismissing it; and that the right of such one to dismiss was absolute. That case was an action at law, and the court was considering the right of dismissal under the rigid rules of law. Those rules should not be applied in all their severity in a cause in equity such as this. Besides, that opinion was rendered in 1884. Section 2, c. 74, Code, did not then contain its present provisions (incorporated in 1891 and 1895) relating to an attempt by an insolvent debtor to give a preference or exclusive security to a creditor. Consequently, we cannot permit the very broad statements in that opinion to sway us against the intendments of later statutes.

Appellees contend that the writ of error is a mere personal right and cannot be administered as property, for the benefit of Moore's creditors. The writ was recognized and treated by the parties in interest as a thing of value. That fact should make it property in an abstract sense. But speculation on the exact nature of the writ is not requisite. It was the subject of a transfer, attempting to prefer one creditor to the exclusion of another. That attempt made it an instrument which the court should control so that wrongful injury might result to no creditor.

Appellees further contend that the petition of the bank should not be entertained in the creditors' suit, because that was a suit embracing only the real estate of Moore and did not contemplate the administration of a personal right. When the manipulation of that right by Moore and Bond threatened

injury to a party to the creditors' suit, they cannot complain when the scope of that suit was enlarged to preserve the lawful rights of that party.

The decree of the lower court is accordingly reversed, and the cause remanded that procedure may be had in furtherance of this opinion.

*Reversed and remanded.*